FILED

Name: CAROLINE HERRLING

Address: 2337 S BEVERLY GLEN #6

LOS ANGELES, CA 90064

Phone: 323-620-0858

Fax: CPHENIX@PUBLICLYCORRECT.COM

In Pro Per

2020 AUG -3  PM 4: 46

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CAROLINE HERRLING

                                    Plaintiff

            v.

Citibank N.A.             Defendant(s).

CASE NUMBER:

CV20-6989-FMO (AFMx)

NOTICE OF MOTION AND MOTION TO
VACATE ARBITRATION AWARD;
MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT THEREOF

Time! 10:00 Am
CRT: 6 D
Date! 9-10-20

CV-127 (09/09)              MEMORANDUM OF POINTS AND AUTHORITIES

1

2

3   DATED: August 3, 2020

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   CAROLINE HERRLING
     IN PRO PER

22

23

24

25

26

27

28

## Table of Contents

*PROCEDURAL HISTORY*    *1*

*PRELIMINARY STATEMENT*    *2*

*DISTINGUISHING FACTS*    *3*

*FACTUAL BACKGROUND*    *4*

    A.    THE SCHEDULING ORDER    4

The arbitrator issued the first scheduling order, ("Scheduling Order"), on August 9, 2019.  The Scheduling Order required that "parties shall designate expert witnesses according to the California Code of Civil Procedure."  (CITATION) Petitioner objected to this deviation from the parties' Agreement.  The Scheduling Order also allowed the parties to file dispositive motions, due October 4, 2019.  (56 days after the Scheduling Order was issued.)    4

    C.    WITNESSES    6

    D.    ARBITRATOR EXCLUDES PETITIONER'S EXPERT WITNESS AND OTHER LATE DISCOVERY ISSUES 7

    E.    EVIDENTIARY HEARING    8

    F.    FAILURE TO RULE ON THE ONLY QUESTION SUBMITTED    9

    G.    PUBLIC POLICY: CALIFORNIA CONSUMER CONTRACT AWARENESS ACT OF 1990    10

        AMBIGUITY DETRIMENTAL TO POST-ARBITRATION RIGHTS    12

    H.    12

*III. GROUNDS TO VACATE FINAL AWARD*    *12*

    A.    THE AWARD SHOULD BE VACATED BECAUSE THE ARBITRATOR REFUSED TO HEAR EVIDENCE PERTINENT AND MATERIAL TO THE CONTROVERSY    12

    STANDARD OF REVIEW UNDER 9 US CODE §10(a)(3)    12

        1.    ARBITRATOR EXCLUDED PETITIONER'S EXPERT WITNESS FROM TESTIFYING AT THE EVIDENTARY HEARING    13

    B.    THE AWARD SHOULD BE VACATED WHERE THE ARBITRATOR'S MISCONDUCT PREJUDICED A PARTY'S RIGHTS    14

    STANDARD OF REVIEW UNDER 9 US CODE §10(a)(3)    14

        1.    THE ARBITRATOR FAILED TO ENSURE THAT DOCUMENTS WERE PRODUCED    14

    C.    THE AWARD SHOULD BE VACATED WHERE THE ARBITRATOR EXCEEDED HIS POWERS IN MANIFEST DISREGARD OF THE LAW    16

    STANDARD OF REVIEW UNDER 9 US CODE §10(a)(4)    16

        1.    SCHEDULING ORDER NO.1 WAS NOT CONSISTENT WITH THE PARTIES' AGREEMENT    16

        2.    THE AWARD MUST BE VACATED BECAUSE THE AWARD DIRECTLY CONFLICTS WITH THE CALIFORNIA CONTRACT AWARENESS ACT OF 1990 AND IS INCONSISTENT WITH PUBLIC POLICY    18

**D.   THE AWARD SHOULD BE VACATED WHERE THE ARBITRATOR SO IMPERFECTLY EXECUTED HIS POWERS THAT A MUTUAL, FINAL, AND DEFINITE AWARD UPON THE SUBJECT MATTER WAS NOT MADE**   19

**STANDARD OF REVIEW UNDER 9 US CODE §10(a)(4)**   20

1.   THE ARBITRATOR FAILED ISSUE A RULING ON THE ONLY QUESTION SUBMITTED   20
The parties agreed to submit the Question to the arbitrator,  However, at no time does the arbitrator answer the Question.   20
In not making any finding about depositing the necklace, the Arbitrator so imperfectly executed his powers so that a mutual, final, and definite award upon the subject matter submitted was not made.  Assuming arguendo that respondent "met the standard of care at every step." (final award).  Until the respondent explains what happened to the petitioner's property, they cannot avoid liability.  The arbitrator expressly states his interpretation of the relevant substantive law in his order issued on the Summary Adjudication of Issues; and it is the law of the case.   20
2.   ARBITRATOR FAILED TO ISSUE A REASONED AWARD   21

*CONCLUSION*   22

COUNT TWO: The Arbitrator refused to hear relevant evidence material and pertinent to the controversy.   23
COUNT TWO LAW:   23
COUNT TWO FACTS:   23

*BILLING RECORDS IN SUPPORT OF PETITIONER'S GROUNDS TO VACATE FINAL ARBITRATION AWARD*   26

*ARGUMENT*   27

*CONCLUSION*   27

1. The petition of Caroline Herrling shows:

**Identity of Parties**

2. Petitioner Caroline Herrling is an instrumentality of the State of California.

3. Respondent Citibank, N.A. is a corporation organized under the laws of the State of South Dakota with its principal place of business in New York, New York.

**Jurisdictional Allegations**

4. There is complete diversity of citizenship between the parties and more than $75,000, exclusive of interest and costs, is at stake in this controversy; so that

this Court has jurisdiction of this matter under the provisions of 28 U.S.C.

§ 1332(a)(1).

**Venue**

5. The venue is proper in the Central District of California under 9 U.S.C. §§ 10, 11
because the award was made in Los Angeles, California, which is within the
Central District of California.

### PROCEDURAL HISTORY

1. The petitioner and respondent entered into a written Rental Agreement for safe
deposit box services ("Rental Agreement") on August 27, 2008.  The Rental
Agreement is attached to this petition and incorporated by reference in it as
Exhibit 1.

2. [Pre-dispute Arbitration Clause]

3. The Rental Agreement provides the parties to resolve their disputes "as to the
terms and obligations of the Rental Agreement" through consumer arbitration at
JAMS, the AAA, or the NAF.

4. On _____, the parties agreed to arbitrate under the terms of their pre-dispute
arbitration clause, the *JAMS Comprehensive Rules and Procedures*, and *JAMS
Minimum Standard for Procedural Fairness*; collectively they constitute the
parties' arbitration agreement ("Agreement").

5. The arbitrator, Glen M. Reiser (ret.), was duly appointed on July 1, 2019, marking
the commencement of the arbitration.

6. *JAMS Consumer Minimum Standards* - Rule 9: *The arbitration provision must allow for the discovery or exchange of non-privileged information relevant to the dispute.*

## PRELIMINARY STATEMENT

The arbitrator engaged in acts of misconduct, all substantially prejudicing the petitioner's rights. (1) The Arbitrator exceeded his powers by issuing a scheduling order contrary to the terms of the parties' Agreement. (2) The petitioner requested relief 4 times for discovery-related issues. The arbitrator failed to provide any substantial relief. The arbitrator's unwillingness to hold the respondent accountable for not producing discovery gives the appearance of bias considering his affirmative disclosure under CRC Ethics Standards 7(e)(2). (CITATION) (3) The arbitrator excluded the petitioner's expert witness from testifying. (4) The arbitrator failed to answer the one question submitted. Failing to answer any question submitted is the paradigm for how an arbitrator can so imperfectly render his services that a final determination on the merits is not possible. (5) The arbitrator exceeded his powers in manifest disregard of the law by failing to uphold strong public policy with regards to the *California Consumer Contract Awareness Act of 1990*. (6) Although ambiguities in the text of a final award do not generally provide grounds to vacate an award, the arbitrator's failure to define "Claim" in the final award is detrimental to petitioner's post-arbitration rights.

(7) The respondent's witnesses knowingly made false statements under oath about facts material to the controversy. The petitioner could not have discovered the respondent's misrepresentations during the arbitration because the arbitrator ordered the respondent not to answer petitioner's interrogatories, (allowing respondent to

conceal material facts).  the identity of the respondent's witnesses and the nature of their testimony was not disclosed until the middle of the evidentiary hearing. Investigating the matter before the close of evidence was not possible.

The purpose of this petition is to vacate the arbitrator's award because the arbitrator and the respondent engaged in misconduct that deprived the petitioner of her due process rights and a fundamentally fair hearing.

### DISTINGUISHING FACTS

The petitioner requests the Court to take notice of circumstances that distinguish this case from other contractual arbitrations.

1. The parties' Rental Agreement is a contract of adhesion.  The petitioner is the consumer party.

2. The petitioner preserved the copy of the Rental Agreement provided to her by the respondent the day she rented her safe deposit box for almost 11 years.  This has contractual significance concerning the use of extrinsic evidence.

3. The arbitration was conducted in the State of California, County of Los Angeles, at JAMS Dispute Resolution Center, on March 3 - 4, 2020.  The evidentiary hearing was continued for a final day on April 22, 2020 by Zoom Videoconference due to the COVID-19 pandemic.

4. The demand for arbitration was filed as a consumer arbitration, where the consumer is only responsible for paying a $250 filing fee to start the proceedings.

5. The parties were subject to a bailor-bailee relationship.  Albeit additional duties may exist between the parties because the petitioner is also a personal banking customer.

6.  Nearly all the relevant information rested in the hands of the respondent because of the nature of the parties' relationship and the situation that gave rise to the dispute.

7.  The arbitrator must issue a reasoned award using California Substantive Law, consistent with enforcement under the FAA.

## FACTUAL BACKGROUND

### A. THE SCHEDULING ORDER

The arbitrator issued the first scheduling order, ("Scheduling Order"), on August 9, 2019. The Scheduling Order required that "parties shall designate expert witnesses according to the California Code of Civil Procedure." (CITATION) Petitioner objected to this deviation from the parties' Agreement. The Scheduling Order also allowed the parties to file dispositive motions, due October 4, 2019. (56 days after the Scheduling Order was issued.)

### B. DISCOVERY

Respondent failed to produce relevant documents material and pertinent to the controversy. Respondent emailed petitioner on September 3, 2019, stating she was waiting for the following documents from her client:

- The invoices from the locksmith;
- The procedures in effect in 2016 for drilling safe deposit boxes and inventorying their contents; and
- Correspondence between the Bank and Ms. Herrling.

Petitioner followed up with the respondent on September 18, 24, and 27 with regards to the production of those documents and the production of 8 other document requests. (CITATION) Petitioner sent a meet and confer letter to the respondent on October 2, 2019. Petitioner requested a discovery conference, ("Conference 1"), with the arbitrator on October 4, 2019. (CITATION) The arbitrator was unavailable for a telephonic conference until October 18, 2019. (14 days after the request). Petitioner made a final attempt to resolve the discovery issue before Conference 1 by sending the respondent another meet and confer letter on October 15, 2019. (CITATION)

At Conference 1, the arbitrator failed to grant any substantial relief, instead he ordered the petitioner to send a request for production under the California Code of Civil Procedure. This had the effect of delaying document discovery for another 30 days. In addition, it allowed the respondent to provide objections not traditionally used in an arbitral forum. The petitioner propounded the request for production of documents on October 19, 2020. On November 15, 2019, the petitioner was served with respondent's answers.

Respondent objected to each category of documents. No additional documents were produced. Petitioner sent the respondent a detailed meet and confer letter on November 25, 2019. Respondent failed to respond.

As a result of the respondent's failure to produce any additional documents, the petitioner requested a second discovery conference, ("Conference 2"), on November 29, 2019. The Arbitrator did not schedule a conference. The case manager replied instructing the parties to resolve the matter themselves. The petitioner sent another

meet and confer letter to respondent on December 9, 2019 and met with respondent
telephonically.  Ultimately, the respondent failed to produce additional documents.

## C. WITNESSES

On January 8, 2020, 6 months after the commencement of arbitration, respondent
sent petitioner an email stating their only percipient witness, Ken Weber, ("Weber"), was
available for deposition. (CITATION). On January 23, 2020, petitioner propounded
interrogatories for Weber to answer and submitted a request to continue the date of the
evidentiary hearing for good cause.  Weber was the only source of information with
regards to the controversy and the petitioner would need time to obtain discovery
because of his work schedule.  Furthermore, the case manager stated the request
provided enough notice for the arbitrator under *JAMS Cancellation/Continuance Policy*,
neither party would incur rescheduling fees or costs.  (CITATION).  The arbitrator would
not be available for a telephonic conference, ("Conference 3"), until February 4, 2020.
(11 days later).  Discovery closed on February 1, 2020.  At Conference 3, the arbitrator
ordered the respondent not to answer the interrogatories propounded by the petitioner,
but he agreed to allow for the late deposition of Ken Weber to be taken.  However, the
arbitrator neglected his duty to schedule the deposition.

## D. ARBITRATOR EXCLUDES PETITIONER'S EXPERT WITNESS AND OTHER LATE DISCOVERY ISSUES

On February 12, 2020, the respondent moved to exclude petitioner's expert witness.
Petitioner opposed the motion on February 14, 2020.  The motion needed the
arbitrator's immediate attention because exhibit lists and witness lists were due on

February 17, 2020 and the evidentiary hearing was scheduled for March 3, 2020. On February 20, 2020, the petitioner requested emergency relief under JAMS Rule 2(c) because there were numerous matters still at issue and the arbitrator was unresponsive. JAMS denied the request. A telephonic conference, ("Conference 4"), was finally scheduled with the arbitrator on February 25, 2020. Following the conference, the arbitrator issued the following orders:

1.     Citibank's February 12, 2020 motion to exclude the testimony of Claimant's expert David McGuinn is granted as Claimant failed to timely designate Mr. McGuinn in accordance with the California Code of Civil Procedure.

2.     Claimant's February 20, 2020 renewed emergency motion seeking to continue the arbitration hearing is denied. The hearing will proceed as scheduled on March 3-4, 2020.

3.     Claimant's renewed request to depose Kenneth Weber is denied. Claimant will have the opportunity to cross-examine Mr. Weber at the hearing.

4.     All evidentiary issues and objections regarding exhibits will be addressed on an ad hoc basis during the arbitration hearing.

5.     Claimant will be permitted to subpoena third party Tim Braun, Vice President of Academy Locksmith, to appear at the hearing on March 3, 2020 at 11 A.M. and produce documents. Claimant will present a subpoena· to the Arbitrator for entry as soon as possible.

**E.  EVIDENTIARY HEARING**

Respondent provided the names of 6 percipient witnesses and 1 expert witness on February 17, 2020.  4 of the witnesses were not known to exist prior to the disclosure. Discovery closed on February 1, 2020, but the arbitrator approved respondent's 11th- hour disclosure.  On the first day of the hearing, Weber testified that Rosa Palencia, Fernando Senabia, Nicholas Webb, Alex Lopez, and Bertrand Vasquez took inventory of the remaining unopened safe deposit boxes on October 1, 2016.  Fernando Senabia and Rosa Palencia corroborated this testimony.  This was the first time the petitioner learned of the existence of Alex Lopez, Nicholas Webb, Bertrand Vasquez.

On day 3 of the evidentiary hearing, respondent's expert witness testified regarding these alleged policies and procedures.  Petitioner objected to respondent's failure to exchange these documents, (as promised in respondent's September 3, 2019 letter). The arbitrator abruptly overruled the objection.

> "Q.    All right.   So let's talk about what you did in this case to formulate those opinions and why you did it.·  Tell us what documents you reviewed in coming to these opinions.
>
> A    I had Ms. Herrling's testimony.   So I read her deposition and I read the policies and procedures around the safe deposit box process from Citi.
>
> MR. KANTOR:·  Your Honor, I'm going to object.   We didn't receive those.
>
> JUDGE REISER:·  Okay.·  Overruled.
>
> MS. LEGITTINO:·  Your Honor, if I may --

> JUDGE REISER:· Overruled.
>
> MS. LEGITTINO:· I'm sorry?
>
> JUDGE REISER:· Overruled.
>
> MS. LEGITTINO:· Oh, thank you."
>
> (Day 3 p 23 ln 6 – 20)

The arbitrator overruled petitioner's objection.  The final award does not draw negative

inferences against the respondent for failing to produce relevant non-privileged

documents pertinent and material to the dispute.  The arbitrator cited respondent's

policies and procedures (not received in evidence) ___ times in the final award.

### F.  FAILURE TO RULE ON THE ONLY QUESTION SUBMITTED

On November 4, 2019, the Arbitrator denied the respondent's Motion for the

Summary Adjudication of Issues, finding the parties' Rental Agreement could not limit

the respondent's liability $32,500.  The ruling is attached as Exhibit 6 and incorporated

by reference herein.  The ruling defines the triable issue of fact in the case:

> "There is a triable issue of fact in this case as to whether Claimant
> left the necklace at issue in her safe deposit box.  Assuming
> Claimant meets her burden in that regard at the time of the
> arbitration hearing, the burden then abruptly shifts to Respondent to
> establish "how it came to be" that the bailed property was lost."[1]

On February 24, 2020, petitioner submitted its arbitration brief to the Arbitrator, it

is attached to this petition as Exhibit 7 and incorporated by reference herein.  The brief

presents the "Question" to be determined by the Arbitrator.  The arbitration brief,

consistent with the SAI ruling, submits the question to be determined by the Arbitrator:

*THE QUESTION*

---

[1] See petitioner's exhibit 6 page 4 lines x – y.

> *The fact the Claimant must establish in this arbitration is simple. Can the Claimant show clear and convincing evidence, under the circumstances, that she deposited her necklace in her safe deposit box at the Respondent's bank on May 14, 2010? (hereinafter "Question"). If so, the burden of proof will then fall upon the respondent to establish some explanation as to what happened to the Claimant's necklace when the Respondent drilled open her box and took exclusive custody and control of the Claimant's personal property.[2]*

The final award issued after the evidentiary hearing cites the SAI ruling, which is substantially the same as the "Question" submitted in petitioner's arbitration brief:

> **"There is a triable issue of fact in this case as to whether or not Claimant left the necklace at issue in her safe deposit box.** *Assuming Claimant meets her burden in that regard at the time of the arbitration hearing, the burden then abruptly shifts to Respondent to establish "how it came to be" that the bailed property was lost." (Emphasis added.)*

The Arbitrator failed to make a finding about the deposit of petitioner's valuable necklace in her safe deposit box in the Final Award.

## G. PUBLIC POLICY: CALIFORNIA CONSUMER CONTRACT AWARENESS ACT OF 1990

The Rental Agreement states that all notices sent by the customer to the bank must be in writing and sent to a specified address. Petitioner retained the copy given to her at the time she rented her safe deposit box in 2008. In her copy of the Rental Agreement there is a "blank space" where the respondent is required fill-in the address where the petitioner is required to send all notice. The arbitrator includes the "Notices" paragraph in the final award with:

---

[2] See exhibit 7 page 2 lines 9 - 15

> The August 27, 2008 safe deposit box agreement between Herrling and Citibank contained the following requirement, in pertinent part:
>
> "Notices – All notices sent to you pursuant to this agreement will be mailed to you by ordinary mail, unless otherwise required by law, or unless we elect to mailed by certified or registered mail, return receipt requested, at the address provided in this Agreement or such other address as you subsequently designate in a written notice to us. If mail sent to you is returned to us more than twice, we may, but will not be required to, attempt to send notices to you at another address that we, in good faith, believed to be your current address. We will not be required to attempt to determine what your current address is; however, if we do so, we will have no liability." (Italics removed.)

The arbitrator states the pertinent part of the notice paragraph is shown above.

The omitted part of the notice paragraph not included in the final award is shown below:

> All notices that you send to us must be sent to
> _____
> _____
>
> ( ---------- page break ---------- )
>
> _____ to be effective.

The California Consumer Contract Awareness Act of 1990 includes California Civil Code §§1799.200 – 1799.207.  It provides statutory relief to consumers for various bad acts _____.  More importantly, public policy prevents the waiver of these rights under §1799.207: "Any waiver of the provisions of this title is contrary to public policy, and is void and unenforceable."  The arbitrator intentionally omitted the "blank space" as not pertinent.

## H. AMBIGUITY DETRIMENTAL TO POST-ARBITRATION RIGHTS

The specific paragraph identified as "Final Award" in the document identified as the Final Award, in its entirety, states: *"The Claim is denied, with prejudice. Herrling shall take nothing by virtue of her Claim."* "Claim", as capitalized, is undefined anywhere in the document represented as the final award. The failure to define "*Claim*", as a purportedly singular proper noun, does not coincide with any reasonable interpretation of an award on petitioner's 3 causes of action. The Arbitrator has so imperfectly executed his powers so that a mutual, final, and definite award upon the subject matter submitted was not made because the most critical line in the entire Final Award is in effect unintelligible. It does not purport to support that the Final Award is on any specific cause of action and certainly not on more than one cause of action.

## III. GROUNDS TO VACATE FINAL AWARD

**A. THE AWARD SHOULD BE VACATED BECAUSE THE ARBITRATOR REFUSED TO HEAR EVIDENCE PERTINENT AND MATERIAL TO THE CONTROVERSY**

**STANDARD OF REVIEW UNDER 9 US CODE §10(a)(3)**

1. <u>ARBITRATOR EXCLUDED PETITIONER'S EXPERT WITNESS FROM TESTIFYING AT THE EVIDENTARY HEARING</u>

On February 25, 2020, the arbitrator excluded petitioner's expert witness from testifying in support of petitioner's case. The arbitrator failed to establish that the petitioner's expert would render testimony that was either cumulative or duplicative in the final award. Therefore, there was no basis for excluding the petitioner's expert

because it deprived petitioner of a fundamentally fair hearing. "Arbitrator's ruling on procedural issues will not be overturned under 9 USCS § 10 unless it had effect of denying parties fundamentally fair hearing or was otherwise unreasonable decision that prejudiced parties' rights." International Longshoremen's Asso. v. West Gulf Maritime Asso., 605 F. Supp. 723, 119 L.R.R.M. (BNA) 3106 (S.D.N.Y.), aff'd, 765 F.2d 135, 119 L.R.R.M. (BNA) 3159 (2d Cir. 1985).

The petitioner could not effectively cross-examine the respondent's expert witness because the basis for the testimony is based nearly entirely on the facts contained in the policies and procedures. By not receiving a copy of the respondent's relevant policies and procedures, the rights of the petitioner were substantially prejudiced because she could not effectively cross-examine the respondent's percipient witnesses. The petitioner was also unable to counter the opinions of the respondent's expert witness because the arbitrator excluded petitioner's expert witness from testifying. The petitioner could not sustain her claim of negligence once the arbitrator excluded her expert witness from testifying.

## B. THE AWARD SHOULD BE VACATED WHERE THE ARBITRATOR'S MISCONDUCT PREJUDICED A PARTY'S RIGHTS

### STANDARD OF REVIEW UNDER 9 US CODE §10(a)(3)

1. THE ARBITRATOR FAILED TO ENSURE THAT DOCUMENTS WERE PRODUCED

In this consumer arbitration, under California Substantive law, the parties are required to agree to the terms of the subject arbitration before the commencement of the

proceedings.  Here, the parties agreed to be bound by their Agreement.  At no time did

the parties consent to any changes to the Agreement.  Therefore, the parties at all times

were under a duty to exchange relevant non-privileged documents, including

confidential documents, under *Rule 9* of the *JAMS Consumer Minimum Standards*.

Rule 9 is particularly important in a consumer arbitration because the documents are in

the exclusive control of the non-consumer party.  It is fundamentally unfair for a

consumer party to have a fair hearing without receiving the documents pertinent and

material to the controversy.  This is critical when the opposing party has exclusive

control of the documentary evidence in the case; frequently occurring in consumer

arbitrations.  In *Chevron Transport Corp. v. Astro Vencedor Compania Naviera, S.A.*,

300 F. Supp. 179, 181 (S.D.N.Y. 1969) the Court held that

> *"[t]he absence of statutory provision for discovery techniques in*
> *arbitration proceedings obviously does not negate the affirmative*
> *duty of arbitrators to insure that relevant documentary evidence in*
> *the hands of one party is fully and timely made available to the*
> *other party. . . . [A] failure to discharge this simple duty would*
> *constitute a violation of FAA § 10(a)(3), where a party can show*
> *prejudice as a result."*

The arbitrator failed to grant any substantial relief or draw any negative

inferences against the respondent.  The arbitrator had placed multiple restrictions on

petitioner's access to pre-hearing discovery.  This left her without the facts necessary to

cross-examine the respondent's witnesses effectively.   The arbitrator limited the

petitioner's line of questioning when she began asking respondent's witness, Brian

Kirby, some exploratory questions:

> ARBITRATOR REISER:· And there may be issues -- and you can
> ask the witness the question:· Who sets policy for safe deposits?
> Who manages the -- you know, the day-to-day protocols for safe
> deposit boxes?· You know, I mean, those are, I guess, discovery
> questions.  I'm not sure they're appropriate here today, but asking
> him about who's in charge of safe deposits doesn't really help at
> this point.

The petitioner could not have asked these questions in discovery because the

respondent withheld the names of its witnesses until after the close of discovery.

> "THE WITNESS:· The records are gone.  Like, I mean, I can't do
> any investigation.
> MR. KANTOR:· Like, doesn't she have a right to her personal
> property?· And she'd like to know what happened to it, and they
> have provided no explanation.
> ARBITRATOR REISER:· So she has the right to litigate the issue,
> which she has.
> MR. KANTOR:· Okay.
> ARBITRATOR REISER:· And she has the right to do discovery,
> and she has the right to do everything that she did do, albeit some
> of it untimely; right?
> So she has a number of rights, some of which she didn't exercise."
> (Hearing Transcript p 349 ln 22 – p 350 ln 11)

The arbitrator expressed his awareness of the petitioner's right to litigate and her

right to obtain discovery at the evidentiary hearing.

The arbitrator fails to recognize that he deprived the petitioner of her rights.

Petitioner requested the arbitrator's assistance in obtaining discovery 4 times before the

evidentiary hearing; requesting relief on October 4, 2019, December 4, 2019, January

23, 2020, and February 20, 2020.  All 4 requests for relief resulted in the arbitrator

making orders that either ignored his affirmative duty to ensure the petitioner received

discovery or barred the petitioner from obtaining discovery.  The respondent's expert witness allegedly received these written policies and procedures although they were not a part of the respondent's exhibits.  The petitioner was not provided a copy of these policies and procedures before, on, or after the evidentiary hearing.

## C. THE AWARD SHOULD BE VACATED WHERE THE ARBITRATOR EXCEEDED HIS POWERS IN MANIFEST DISREGARD OF THE LAW

### STANDARD OF REVIEW UNDER 9 US CODE §10(a)(4)

1. SCHEDULING ORDER NO.1 WAS NOT CONSISTENT WITH THE PARTIES' AGREEMENT

"Section 10 of [9 U.S.C.] permits vacatur "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). A party has "a right to arbitration according to the terms for which it contracted," W. Employers Ins. Co. v. Jefferies & Co., 958 F.2d 258, 261 (9th Cir. 1992), and arbitrators exceed their powers for purposes of § 10(a)(4) when they "act outside the scope of the parties' contractual agreement," Mich. Mut. Ins., 44 F.3d at 830; see Stolt-Nielsen, 130 S. Ct. at 1772-75. . . ." (Emphasis added)

Petitioner objected to the designation of expert witnesses be in accordance with the California Code of Civil Procedure because it was not consistent with the parties' Agreement.  Not only would this requirement be inconsistent with the parties' Agreement, but it also defeats the purpose of arbitration.  "Our path to that conclusion begins by recalling that the purpose of arbitration is to voluntarily resolve private disputes in an **expeditious and efficient manner**." *Broughton v. Cigna Healthplans*, 21

Cal. 4th 1066, 1080, 988 P.2d 67, 90 Cal. Rptr. 2d 334 (1999) (emphasis added.)  The parties agreed to the terms of their Agreement prior to the commencement of arbitration.  Resolution of disputes on their merits allows requires the "principal purpose of ensuring that private arbitration agreements are enforced according to their terms…" *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989).  The arbitrator exceeded his powers when he ordered that the parties designate expert witnesses consistent with the California Code of Civil Procedure, ("CCP").

The shorter timeline for arbitral proceedings makes it impractical and an unnecessary burden on the parties to designate experts 70 days prior to an evidentiary hearing.  Moreover, it should not and could not have been the arbitrator's intent to require strict compliance with the timing requirements under the CCP because the Scheduling Order would have prejudiced the parties by restricting the use of expert witnesses to support any dispositive motion.  Dispositive motions were due 56 days after the Scheduling Order was issued.  Accordingly, the respondent submitted an expert witness declaration with her Motion for the Summary Adjudication of Issues without a timely designation of her expert witness.  Petitioner made no objection, despite respondent's failure to timely designate an expert witness because it would be inconsistent with the goal of resolving the parties' dispute based on the merits.  That being said the respondent moved to exclude petitioner's expert witness from testifying by exploiting the law originally intended to prevent gamesmanship.

2. THE AWARD MUST BE VACATED BECAUSE THE AWARD DIRECTLY
   CONFLICTS WITH THE CALIFORNIA CONTRACT AWARENESS ACT OF
   1990 AND IS INCONSISTENT WITH PUBLIC POLICY

"It is against the backdrop of specific state law that we consider whether the
Arbitrator acted in manifest disregard of the law to permit vacatur under the FAA." *Biller
v. Toyota Motor Corp.*, supra, 668 F.3d at 667. In this case, the arbitrator made an
omission in the final award that could not be attributed to error because of its preclusive
effect on the ability for the petitioner to prevail on her claims. The petitioner argues that
failing to include an address in the Rental Agreement where the petitioner should send
any notices to the respondent, created an impossibility to fulfill her duty to change her
address under the contract. However, in California there is clear public policy rendering
any waiver of the protections afforded to everyone under the California Contract
Awareness Act of 1990, ("CCAA"), as void and unenforceable under California Civil
Code §1799.207. Section 1799.205 provides that a seller who fails to comply with the
requirements of §1799.202 is liable to the consumer for any actual damages suffered by
the consumer as a result of that failure. The remedy is also identified as nonexclusive
and in addition to any other remedies and penalties available under state law.

The FAA supports vacating an arbitration award when the award is inconsistent with
public policy and directly conflicts with federal or state law. "In reviewing arbitration
award, court may not reweigh evidence or examine weight or credibility of
witness testimony; court's focus is on arbitrator and contract, not on facts
underlying dispute; inconsistency with public policy is another ground for reversing
arbitrator's decision, but this standard applies only where award directly conflicts with

federal or state law." Local Union 1160 v. Busy Beaver Bldg. Ctrs., 616 F. Supp. 812 (W.D. Pa. 1985). California Civil Code §1799.202 provides in part "…the copy of the contract provided to the consumer shall not contain any blank spaces to be completed after the consumer signs the contract…" The arbitrator manifestly disregarded state law and public policy allows consumers to claim actual damages under California Civil Code §1799.202 because the Rental Agreement contained "blank spaces" where the petitioner was instructed to update her address.  Since the arbitrator determined that the petitioner failed to properly update her address with the bank in writing, the petitioner still should have been awarded actual damages for the respondent's breach of the CCAA.  The award conflicts directly with California State Law because it excuses the unconditional liability of the respondent for their failure to adhere to the California Contract Awareness Act, excluding the allegedly impertinent part of the "Notices" paragraph.

**D. THE AWARD SHOULD BE VACATED WHERE THE ARBITRATOR SO IMPERFECTLY EXECUTED HIS POWERS THAT A MUTUAL, FINAL, AND DEFINITE AWARD UPON THE SUBJECT MATTER WAS NOT MADE**

**STANDARD OF REVIEW UNDER 9 US CODE §10(a)(4)**

1. THE ARBITRATOR FAILED ISSUE A RULING ON THE ONLY QUESTION SUBMITTED

The parties agreed to submit the Question to the arbitrator,  However, at no time does the arbitrator answer the Question. In not making any finding about depositing the necklace, the Arbitrator so imperfectly executed his powers so that a mutual, final, and

definite award upon the subject matter submitted was not made.  Assuming arguendo

that respondent "met the standard of care at every step." (final award).  Until the

respondent explains what happened to the petitioner's property, they cannot avoid

liability.  The arbitrator expressly states his interpretation of the relevant substantive law

in his order issued on the Summary Adjudication of Issues; and it is the law of the case.

> *"As stated in Vilner v. Crocker National Bank (1979) 89 Cal.App.3d*
> *732, at 737, in pertinent part:*
>
> *"If a bailor alleges and proves the deposit of property with the*
> *bailee, a demand therefor, and the failure of the bailee to redeliver,*
> *the burden of proof rests upon the bailee to explain his failure.*
> *[Citations.]…*
>
> *When a bailee fails to redeliver on demand it must establish that it*
> *is without fault. It cannot meet that burden without first explaining*
> *how it came to be that it was impossible to redeliver that which was*
> *bailed."*

The arbitrator firmly establishes his awareness of the law and restates it in the final

award. (final award)

Assuming arguendo that the necklace was not in petitioner's safe deposit box when

it was forced open, allegedly on October 1, 2016, the arbitrator still failed to

determine whether or not the claimant left her necklace in her safe deposit box

before that date.

The arbitrator avoids answering the question, with alternate findings:

*"Before October 1, 2016, the safe deposit box required Herrling's key to open the box. No evidence was presented that Citibank had access to Herrling's key."* (final award)

2. <u>ARBITRATOR FAILED TO ISSUE A REASONED AWARD</u>

Stark v. Sandberg, Phoenix & von Gontard, P.C. (8th Cir. 2004) 381 F.3d 793, 799.

"The Ninth Circuit has recognized three narrow exceptions to the general rule of deference to an arbitrator's decision: (1) when the arbitrator's award does not "draw its essence from the . . . agreement" and the arbitrator is dispensing "his own brand of industrial justice," Enterprise Wheel & Car Corp., 363 U.S. at 597, 80 S.Ct. at 1361; (2) when the arbitrator exceeds the boundaries of the issues submitted to him, Pack Concrete, Inc. v. Cunningham, 866 F.2d 283, 285 (9th Cir.1989); . . . .."

(Emphasis added)

A JAMS award must provide the arbitrator's reasoning on the face of the award (JAMS Rule 24(h); ); see also Bankers Life & Cas. Ins. v. CBRE, Inc., 830 F.3d 729, 733 (7th Cir. 2016) (reversing confirmation of JAMS award that relied without explanation on language outside the contract)).

The length of the body depends on the type of award. In:

•       A reasoned award, the body may be lengthy depending on the number and complexity of the claims submitted. Courts have described a reasoned award as "something more than a line or two of unexplained conclusions, but something less than full findings of fact and conclusions of law" (Leeward Constr. Co. v. Am. Univ. of Antigua – Coll. of Med., 826 F.3d 634, 640 (2d Cir. 2016)). For each claim in a reasoned award, the arbitrator:

- summarizes the parties' competing positions; and

- provides detailed legal or factual reasons for his disposition of each claim.

In *Smarter Tools Inc. v. Chongqing SENCI Import & Export Trade Co.*, 18-cv-2714

(AJN), 2019 U.S. Dist. LEXIS 50633 (S.D.N.Y. Mar. 26, 2019), the United States District

Court for the Southern District of New York held that when the applicable arbitration

clause required a "reasoned [arbitral] award," an award that contained "no rationale" for

rejecting the totality of one party's claims was not a reasoned award, and the arbitrator

had exceeded his authority in violation of the Federal Arbitration Act (FAA).


PMA Capital Ins. v. Platinum Underwriters Berm., LTD., supra, 659 F. Supp. 2d at

639.

> ""[A]n Award that conflicts directly with the contract cannot be a 'plausible
>
> interpretation.'" Frederick Meiswinkel, Inc. v. Laborers Local Union 126, 744 F.2d
>
> 1374, 1377 (9th Cir. 1984); Pacific Motor Trucking v. Automotive Machinists
>
> Union, 702 F.2d 176, 177 (9th Cir. 1983)." (Emphasis added)


## CONCLUSION

A United States Federal District Court has the power under the Act, 9 U.S.C. §§ 10 &
11, to vacate, modify, correct or clarify contractual Arbitration Awards, or in certain
instances to order a rehearing or clarification of the award in a further arbitration
proceeding

A "district court must take the award as it finds it and either vacate the entire award
using section 10 or modify the award using section 11." Legion Ins. Co. v. VCW, Inc.,
198 F.3d 718, 721 (8th Cir. 1999). The deference owed to arbitration awards, however,
"is not the equivalent of a grant of limitless power," Leed Architectural Prods., Inc. v.
United Steelworkers of Am., Local 6674, 916 F.2d 63, 65 (2d Cir. 1990), and "courts are
neither entitled nor encouraged simply to rubber stamp' the interpretations and
decisions of arbitrators." Matteson v. Ryder Sys. Inc., 99 F.3d 108, 113 (3d Cir. 1996).

Thus, courts may also vacate arbitral awards which are "completely irrational" or "evidence[] a manifest disregard for the law." Hoffman v. Cargill Inc., 236 F.3d 458, 461 (8th Cir. 2001) (internal quotations and citations omitted)." (Emphasis added)

**COUNT TWO: The Arbitrator refused to hear relevant evidence material and pertinent to the controversy.**

COUNT TWO LAW:

1. Vacatur under 9 US Code 10(a)(3) and 9 US Code 10(a)(4)

COUNT TWO FACTS:

2. Petitioner produced a true and correct copy of the estate receipt she received from her late grandmother's estate in July of 2011; the identity of the attorney in the matter was redacted for the privacy of the estate's executor.

3. The document effected the conveyance of the valuable Hammerman Brothers petitioner received from her late grandmother.

4. The legal disposition of the necklace did not change until the petitioner's grandmother passed away on _____, 2010.

5. Petitioner offered the estate receipt as proof of ownership of the necklace in the same way one would offer a title document to prove ownership of the vehicle.

6. That is the only document petitioner received from her grandmother's estate concerning her valuable necklace.

7. The respondent had this document since August 29, 2019, and had the opportunity to question the petitioner about the document at her deposition on September 17, 2019.  Respondent raised no objections.

8. The document had the name of counsel redacted to protect the privacy of the estate and the estate's representative.

9.  The arbitrator made the representation that the document was a court document and was "about as unprivileged as conceivable; right?" [citation]

10. The arbitrator was concerned about the privacy issue, so the petitioner's representative asked if the petitioner would feel comfortable revealing the information.  She said "Yeah." [citation]

11. Petitioner's representative accepted responsibility for redacting the information and made an offer of proof to provide the arbitrator with an unredacted copy.

12. The arbitrator replied:

> *"Well it's a bit late. […] And that's problematic.  I mean there was no issue raised prehearing, but it sort of inhibits the bank when conducting an inquiry, unless you do a case search in Dane County, Wisconsin."* (p 200 ln 3 – 7)

13. Ultimately, the petitioner's representative offered it into evidence again.  The arbitrator replied:

> *"It'll be received, but, you know, the weight is not substantial.  But I see that as the – for invalid hearsay purposes to establish why she said $54,250.  All right.  So it'll be received for the non-hearsay purposes."* (p 202 ln 6 – 11)

14. Petitioner's representative then made a 2nd offer of proof to get the petitioner's parents' testimony (to prove the authenticity of the document).

15. CONTINUE

16. Adeline Herrling passed away in 2010.  That year the United States Internal Revenue Service exempt estates from paying inheritance tax.

17. It was not unusual for informal probate to be the standard operating procedure in many jurisdictions.

18. Dane County, Wisconsin followed this trend, and accordingly, there are no formal probate records for the probate of Adeline Herrling's Estate.  Court records show a filing and a subsequent termination of the proceedings with no action taken.

19. The majority of Adeline Herrling's property was held in trust and would thus not be subject to any probate proceedings.

20. It is believed that the necklace was inadvertently omitted from the trust because it had been in the petitioner's possession for several months when her grandmother passed.  Accordingly, it was not assigned to the trust.

COUNT TWO ARGUMENT:

21. The arbitrator exceeded his authority in manifest disregard of the law by refusing to hear evidence to overcome any doubt with regards to the estate document provided by the petitioner.

22. This was the only document she had that could prove her ownership of the valuable necklace, except for the photo of her wearing it.

23. The petitioner was cooperative and willing to provide the arbitrator with any information needed to establish the authenticity of her property rights.

24. The arbitrator asked a few additional questions, but no additional information was requested.

25. The final award makes it clear that revealing the redacted text would not make the evidence more substantial for the arbitrator.  A footnote from the final award reads:

> *"Herrling testified that she received the necklace in late December 2009 as a gift from her grandmother.   That testimony is questionable because there would be no reason to subsequently probate and appraise the asset if it was an inter vivos gift. The Arbitrator's ability to make inquiry on this issue was thwarted by Herrling's redaction of information on the receipt, received as Ex. S. Public records establish that Adeline Herrling died on July 10, 2010."*

26. "In some cases, "legally dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law." Coutee v. Barington Capital Group, L.P., 336 F.3d 1128, 1133 (9th Cir. 2003)."

## BILLING RECORDS IN SUPPORT OF PETITIONER'S GROUNDS TO VACATE FINAL ARBITRATION AWARD

### ARGUMENT

### CONCLUSION

Cf. Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 927 (9th Cir. 2013) ["Federal law favoring arbitration is not a license to tilt the arbitration process in favor of the party with more bargaining power."]

Section 10(a) of the Federal Arbitration Act ("FAA") provides the circumstances under which a federal district court may vacate an arbitration award.8 An award may be vacated "where there was evident partiality or corruption in the arbitrator[]." 9 U.S.C. § 10(a)(2). Although the FAA was enacted to encourage the expeditious resolution of disputes through arbitration, "it was [not] the purpose of Congress to authorize litigants to

submit their cases and controversies [to arbitrators who] might reasonably be thought biased against one litigant and favorable to another." Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S. 145, 147 (1968). Under the evident partiality standard, the party challenging the award has the burden "of proving facts which would establish a reasonable impression of partiality." Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co., 756 F.2d 742, 746 (9th Cir. 1985); see also Schmitz v. Zilveti, 20 F.3d 1043, 1048 (9th Cir. 1994). This showing requires "specific facts indicating improper motives" on the part of the arbitrator. Toyota of Berkeley v. Auto. Salesman's Union, Local 1095, 834 F.2d 751, 755 (9th Cir. 1987); see also Scandinavian

Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 72 (2d Cir. 2012) (the evident partiality standard is met "when a reasonable person, considering all the circumstances, would have to conclude that an arbitrator was partial") (internal citation and quotation marks omitted).

("A person's right of access to judicial and quasi-judicial bodies to decide controversies

is a fundamental component of

our society that cannot be impaired by the threat of punishment or retaliation."); see

generally Cal. Teachers Ass'n v. State, 20 Cal. 4th 327, 338–39 (1999).


**ARBITRATION AWARD IS COMPLETELY IRRATIONAL**

An arbitrator's decision must be based on the facts in evidence and on the terms of the contract or agreement from which the dispute arises.
If it does not, the Court may vacate the Award.

> "An award may be vacated if it is "completely irrational." Comedy Club II, 553 F.3d at 1288. This "standard is extremely narrow and is satisfied only 'where [the arbitration decision] fails to draw its essence from the agreement.'" Id. (citing Hoffman v. Cargill Inc., 236 F.3d 458, 461-62 (8th Cir. 2001)) (alterations in Comedy Club II)."

Williams v. NFL (8th Cir. 2009) 582 F.3d 863, 883.

> "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable."


**<u>THE AWARD EXPRESSES A MANIFEST DISREGARD OF APPLICABLE LAW</u>**
In some cases, "legally dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law." Coutee v. Barington Capital Group, L.P., 336 F.3d 1128, 1133 (9th Cir. 2003)."

DECLARATION OF JAMES KANTOR

I, James Kantor, declare the following:

1. I am over the age of 18 years old.  I have personal knowledge of the facts contained in this declaration, and if called to testify I could and would testify competently as to the truth of the facts stated herein.

2. I represented Plaintiff in JAMS Consumer Arbitration Case No.: 1210036436, *Caroline Herrling vs. Citibank, N.A.*

3. On 5/16/19,  I received am email from JAMS informing the parties that JAMS policy on *Consumer Arbitration Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness* applied and was instructed to carefully review the enclosed Minimum Standards as JAMS requires that the parties comply with them in order to proceed.  Attach is a true and correct copy of the Notice including JAMS Minimum Standards of Procedural Fairness as Exhibit 1.

4. On 7/1/19, I received an email from JAMS titled "*Appointment of Arbitrator*", notifying the parties of the following: (1) Hon. Glen M. Reiser had been appointed as Arbitrator; (2) Arbitration would be administered consistent with the JAMS Policy on Consumer Arbitrations, Minimum Standard of Procedural Fairness; (3) JAMS would administer the case consistent with the JAMS Cancelation/Continuance policy; (4) the paying party has been billed a preliminary retainer to cover the expense of all pre-hearing work, such as reading, drafting of orders, and conference calls; (5) enclosed was an invoice for the preliminary retainer; and (6) provided contact information for

Reina Feazell, Case Manager to Hon. Glen. M. Reiser. Attach is a true and correct copy of the emailed titled "*Appointment of Arbitrator* "as Exhibit 2.

5. On 8/8/19, the Arbitrator conducted a Preliminary Arbitration Management Conference Call. On the call, was myself and opposing counsel, Tricia Legittino.

6. On 8/9/19, I received the Arbitrator's Preliminary Hearing and Scheduling Order No. 1 which contained the following key dates:

      a.     Response and Affirmative Defenses consistent with Rule 9(c) of the Rules due by 8/30/19.

      b.     All non-expert discovery shall be completed on or before Monday, 1/6/20.

      c.     Final Status Conference on Friday, 1/31/20.

      d.     Witness List including a 'brief' summary of testimony and time estimates not later than 1/22/20 and supplementally designated witnesses by 1/29/20.

      e.     Designation of Documents not later than 1/22/20 and parties could supplement the document designation by 1/29/20.

      f.     SAI Motion to be heard before the Arbitrator on 10/28/19.

      g.     Evidentiary Hearing shall be conducted on 2/5/20 and 2/6/20.

h.     Prehearing Briefs shall be exchanged on or before 1/29/20

i.     Trial Exhibits shall be designated on or before 1/22/20 and shall be supplemented on or before 1/29/20; Joint exhibit list shall be prepared and submitted not later than 1/29/20 and parties shall indicate any objections to the introduction of any exhibit on or before 1/31/20.

j.     Stipulation of Undisputed Facts to be submitted to the Arbitrator on or before 1/29/20.

k.     All deadlines shall be strictly enforced.

7.  Citibank's counsel sent me a letter dated September 3, 2019 in which she claimed to be waiting on the following documents from Citibank: (1) the invoices from the locksmith; (2) the procedures in effect in 2016 for drilling safe deposit boxes and inventorying their contents; and (3) correspondence between the Bank and Ms. Herrling. Attach is a true and correct copy of the letter dated September 3, 2019 as Exhibit 3.

8.  I followed up on requested discovery from Citibank on September 18, 2019 and October 2, 2019 and received no response.

9.  In a letter dated October 4, 2019, I requested a telephone conference with Arbitrator to resolve the following issues: (1) Respondent had not produced any of the 2nd set of documents, the remainder of the 1st set of documents, and Respondent had ceased communication with Claimant; (2) opposing counsel has unreasonably

denied Claimant's representative an opportunity to review the draft of Claimant's deposition transcript prior to submitting it into evidence; and (3) Claimant requests a continuance on the deadline to submit a motion for summary judgment due to newly discovered undisputed facts that support a motion for summary judgment after Respondent failing to respond to any of Claimant's correspondence which included a request to stipulate to a continuance on the deadline to submit a motion for summary judgment.  Attach is a true and correct copy of the letter dated October 4, 2019 as Exhibit 4.

10.  Respondent finally replied to Claimant's letter on October 4, 2019 (after Claimant sent letter to the Arbitrator requesting continuance). Respondent's response fails to acknowledge Claimant's request for continuance due to Respondent's late production of discovery. Again, Respondent failed to produce all the requested discovery.

11.  I received a letter from Respondent on October 4, 2019, the letter was in response to Claimant's request to produce all notice(s) sent pursuant to the "Termination" paragraph beginning in the middle of page 2 of the agreement, Respondent responded with "The above-quoted "Termination" paragraph is not applicable to this case since neither Citibank nor your client terminated the Rental Agreement." Attach is a true and correct copy of the response letter dated October 4, 2019 as Exhibit 5.

12. I sent Respondent a letter on October 14, 2019 attempting to resolve all discovery disputes. Respondent failed to respond.

13. On October 16, 2019, I was copied on an email from Respondent to JAMS requesting to add an issue for discussion during the upcoming conference with the Arbitrator and Claimant's representative. The request was that she needed to reschedule the hearing date currently set for February 5-6, 2020. Respondent provided no explanation nor gave fair notice to Claimant.

14. Arbitrator held a conference call on October 18, 2019 to discuss Respondent's failure to respond to Claimant's request for document. In attendance was myself and opposing counsel, Tricia Legittino. During the conference, Respondent agreed to have Claimant make a formal document request in order to be able to better respond to Claimant's allegedly unclear prior document requests.

15. On October 21, 2019 Arbitrator issued the *First Amended Report of Preliminary Hearing and Scheduling Order No. 1.* The Scheduling Order stated:

     a.    All non-expert discovery shall be completed on or before Monday, 2/3/20.

     b.    Exchange of Documentary Evidence

     c.    Final Status Conference on Friday, 2/28/20.

d.     Witness List including a 'brief' summary of testimony and time estimates not later than 2/17/20 and supplementally designated witnesses by 2/24/20.

e.     Designation of Documents not later than 2/17/20 and parties could supplement the document designation by 2/24/20.

f.      SAI Motion to be heard before the Arbitrator on 10/28/19.

g.     Evidentiary Hearing shall be conducted on 3/2/20, 3/3/20 and 3/4/20.

h.     Prehearing Briefs shall be exchanged on or before 2/24/20

i.      Trial Exhibits shall be designated on or before 2/17/20 and shall be supplemented on or before 2/24/20; Joint exhibit list shall be prepared and submitted not later than 2/24/20 and parties shall indicate any objections to the introduction of any exhibit on or before 2/26/20.

j.      Stipulation of Undisputed Facts to be submitted to the Arbitrator on or before 2/24/20.

k.     The parties shall submit post-hearing briefs in support of final argument to be heard at the evidentiary hearing or thereafter as the parties shall agree.

l.    The award shall state the reasons on which the decision of the arbitrator is based. The award may be served by regular mail.

m.    Case Management - all documents shall be served on JAMS by serving the case manager, Jasmine Lu, at jlu@jamsadr.com with copies to all counsel. All documents served by JAMS in this matter will be served electronically by email.

n.    All deadlines herein shall be strictly enforced. This Order shall continue in effect unless and until amended by subsequent order of the Arbitrator.

16.    On November 25, 2019, I sent out a meet and confer letter addressing several issues with Respondent's response to Claimant's Request for Production including Respondent's continued failure to comply with Arbitrator's October 21, 2019 Order. Respondent failed to respond.

17.    I was forced to bring Respondent's failure to comply with the Arbitrator's Order to the case manager's attention on November 29, 2019 in an email regarding "Discovery Deficiencies". The email further requests a discovery conference with the Arbitrator to resolve the discovery issues still pending after the original discovery order issued on October 21, 2019. Claimant even requested sanctions against Citibank due to the parties ongoing obligation to produce discovery. Claimant received no response from the Arbitrator or case manager.

Attach is a true and correct copy of email titled "Discovery Deficiencies" dated November 29, 2019 as Exhibit 6.

18.     On December 3, 2019, I finally received a reply from Respondent.  The reply consisted of the Respondent further objecting to comply with the Arbitrator's Order and refusing to produce the requested discovery.  Attach is a true and correct copy of the reply dated December 3, 2019 as Exhibit 7.

19.     On January 20, 2020, I served opposing counsel and case manager a formal *Request for Continuance of Scheduled Hearing* due Respondent's utter refusal to produce known discovery in Respondent's possession.

20.     I did not receive a response from the Arbitrator from 11/1/19 to 2/4/20 (almost three months).

21.     On 2/14/20, I sent another letter to opposing counsel and case manager addressing Respondent's continued failure to produce discovery in her possession. Attach is a true and correct copy of the letter dated February 14, 2020 as Exhibit 8.

22.     Arbitrator held a conference call on 2/25/20.   In attendance was Petitioner, opposing counsel, Tricia Legittino, and myself.  During 2/25/20 conference call, the Arbitrator scolded Petitioner for being "untimely" and denied Petitioner's request for continuance;  denied Petitioner to depose Ken Weber;  granted Respondent's Motion to Exclude Claimant's Expert;  granted Petitioner's request for subpoena regarding locksmith document production.  Further, Arbitrator directly

denied Petitioner's personal plea to not exclude Petitioner's expert witness by informing that she had already paid $4500 to retain him and that his testimony was critical to support her claim for Negligence. Petitioner further explained that she notified opposing counsel of the expert witness' identity back in September 2019 during Claimant's deposition.

23.    Trial was conducted in the JAMS' Century City Office on 3/3/20 and 3/4/20 and via video conference on April 22, 2020.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 3, 2020                    /James Kantor/_____
                                        JAMES KANTOR
                                        *Petitioner's Limited Representative*
                                        *(Arbitration proceedings only)*